NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2912
_____

MCGUIRE MEMORIAL

v.

TEAMSTERS LOCAL 261, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:25-cv-00241)
District Judge:  Honorable Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 29, 2026
_____

Before:  SHWARTZ, PHIPPS, and RENDELL, Circuit Judges.

(Filed: July 14, 2026)
_____

OPINION*
_____

---

  * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM.

Local 261 of the International Brotherhood of Teamsters appeals the District Court's order granting McGuire Memorial's petition to vacate an arbitration award and denying Teamsters' motion to dismiss the petition and confirm the award. For the following reasons, we will vacate and remand.

I

McGuire operates facilities caring for clients with physical and mental disabilities and is subject to state regulations governing such facilities. McGuire and Teamsters, the bargaining agent for McGuire's employees, are parties to a collective bargaining agreement ("CBA"). The CBA requires that employee grievances be resolved by a neutral arbitrator who is entitled "to interpret, apply or determine the compliance within the provision of [the CBA], but . . . shall not have jurisdiction or authority to add to, delete from or alter" any provision. App. 86.

Three provisions of the CBA are relevant here. First, Article 3, Section 2 recognizes that McGuire is subject to "extensive regulatory authority" by the state and thus provides that "[d]ealings with such governmental agencies, interpretation of the regulations, directives and standards and the means for compliance shall be the right of [McGuire]." App. 81. Second, Article 3, Section 1 affords McGuire discretion over "hiring, suspending or discharge for just cause." *Id.* Finally, Article 10 states "[n]o employee shall be disciplined [or] suspended . . . without just cause." App. 87.

This dispute concerns McGuire's suspension of an employee without pay following a client's report of abuse. After an investigation concluded the allegations

2

were "unfounded," McGuire reinstated the employee and paid her for the scheduled regular shifts she had missed, but did not pay her for her previously scheduled overtime shifts. App. 41. Teamsters filed a grievance on her behalf for the unpaid overtime shifts, arguing that she was suspended without just cause in violation of Article 3, Section 1 and Article 10. Before the arbitrator, McGuire responded that the suspension was not governed by those provisions but rather was covered by Article 3, Section 2 because it took action to comply with state regulations mandating

> [i]f there is an incident of abuse, suspected abuse or alleged abuse of an individual involving a staff person . . . the involved staff person . . . *may not have direct contact with an individual* until the investigation is concluded and the investigating agency has confirmed that no abuse occurred or that the findings are inconclusive.

55 Pa. Code § 6100.46(b) (emphasis added).

The arbitrator rejected McGuire's argument. At the outset, the arbitrator noted that "[t]he facts in this case are really not in dispute." App. 123. He found that McGuire "suspended" the employee and after an "investigation . . . [it] determined that the allegations [against the employee] were unfounded." *Id.* The arbitrator further found that the "suspension [was then] reversed." *Id.* Thus, the suspension, he concluded, violated Article 3, Section 1 and Article 10 because McGuire cannot suspend an employee "without first having just cause." App. 42. The arbitrator next concluded that Article 3, Section 2's regulatory compliance provision did not "supersede" the "just cause" provisions, so he ordered McGuire to pay the employee for the missed overtime shifts. App. 42. "That is exactly how a just cause provision is interpreted," he explained,

3

"when discipline is reversed or overturned . . . [;] the Employer is required to make the employee whole for all losses." App. 124.

McGuire sued to vacate the award. Teamsters removed the case to federal court, moved to dismiss, and filed a counterclaim to confirm and enforce the award. The District Court granted McGuire's motion to vacate and denied Teamsters' motions, concluding that the arbitrator erred because Article 3, Section 2 "grants McGuire unfettered discretion as to the means to comply with government regulations" and suspending the employee pending an investigation complied with those regulations. McGuire Mem'l v. Teamsters Loc. 261, Int'l Bhd. of Teamsters, No. 2:25-CV-00241-MJH, 2025 WL 2467991, at *5-6 (W.D. Pa. Aug. 27, 2025). Teamsters appealed.

II[1]

Courts have "very limited power to review a labor arbitration award by an arbitrator appointed pursuant to a [CBA]." Stroehmann Bakeries, Inc. v. Loc. 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1441 (3d Cir. 1992); see also Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E., 817 F.3d 857, 861 (3d Cir. 2016) ("We review [arbitral awards] under an extremely deferential standard, the application of which is generally to affirm easily the arbitration award." (citations and

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. Because the District Court converted its ruling into final orders, we have jurisdiction under 28 U.S.C. § 1291 and the Federal Arbitration Act, 9 U.S.C. §§ 16(a)(1)(D)–(E), (3). "We exercise plenary review of the District Court's decision to vacate" an arbitral award. Verizon Pa., LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000, 13 F.4th 300, 306 (3d Cir. 2021). We "presume that the arbitrator's factual findings are correct unless they are clearly erroneous." Caesars Ent. Corp. v. Int'l Union of Operating Eng'rs Loc. 68 Pension Fund, 932 F.3d 91, 94 (3d Cir. 2019).

4

internal quotation marks omitted)).  In general, courts must defer to "the arbitrator's view of the facts and of the meaning of the contract," as well as his "honest judgment" as to the appropriate remedy for a contractual breach.  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987); see also Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) ("[G]eneral[ly] . . . we must enforce an arbitration award if it was based on an '*arguable' interpretation and/or application* of the [CBA], and may only vacate it if there is *no support* in the record for its determination or if it reflects a 'manifest disregard of the agreement, totally unsupported by principles of contract construction.'" (emphasis added) (quoting News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Loc. 103, 918 F.2d 21, 24 (3d Cir. 1990))).

Courts may vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  "An arbitrator exceeds [his] powers if [his] award fails to 'draw[ ] its essence from the [CBA].'"  StoneMor, Inc. v. Int'l Bhd. of Teamsters. Loc. 469, 107 F.4th 160, 163 (3d Cir. 2024) (third alteration in the original) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  "An arbitration award draws its essence from the [CBA] if 'the interpretation can in *any rational way* be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties['] intention.'"  Tanoma Mining Co. v. Loc. Union No. 1269, United Mine Workers of Am., 896 F.2d 745, 748 (3d Cir. 1990) (quoting Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d

5

Cir. 1969)).

Despite this highly deferential standard, which strictly limits judicial review of arbitration awards, the District Court rejected the arbitrator's "arguabl[e]" interpretation of the CBA. Newark Typographical, 918 F.2d at 24 (emphasis omitted). The District Court faulted the arbitrator's decision as resulting from his "misconstru[al of] the CBA" and his purported "insert[ion] [of] provisions that are not within" it. McGuire Mem'l, 2025 WL 2467991, at *4. This was error. Although a court might construe a CBA differently from an arbitrator, so long as the arbitrator's interpretation "can in *any rational way* be derived from the agreement," it must be left undisturbed. Tanoma Min. Co., 896 F.2d at 748.

The District Court reasoned that the arbitrator's decision impermissibly and categorically read out Article 3, Section 2, which grants McGuire sole discretion to determine how it complies with government regulations. It viewed the suspension without pay as within McGuire's "sole discretion" because it was the way McGuire chose to implement the no contact requirement. But that reading would have the state regulation do much more than is required of such an employer and would further read the just cause provision out of the CBA. The suspension was not a way to ensure no contact; it was a sanction. Physical separation was a result, but not the reason for the suspension. Whereas the District Court read the just cause provision out of the agreement, the arbitrator's decision gave effect to both Article 3, Section 2 and the just cause provision.

Under the arbitrator's interpretation, McGuire was still permitted to ensure no contact between the employee and the patient in any way it desired. It could have, for

6

example, placed the employee in a non-clinical role, placed the employee at a different location, or it could, as it did, suspend her, or even terminate her.  While it was McGuire's choice as to how it would comply with the regulation, its choice here, the arbitrator concluded, triggered its obligation to its employee under the CBA's just cause provision.  We cannot conclude that there is "*no support* in the record for" the arbitrator's interpretation of the CBA and the interaction of these two provisions.  Exxon Shipping Co., 993 F.2d at 360 (emphasis omitted).  Therefore, the District Court should have enforced it.

We also conclude that the District Court erred in engaging in its own factfinding.  The District Court found, contrary to the conclusion of the arbitrator, "there was never any disciplinary suspension taken against this employee."  McGuire Mem'l, 2025 WL 2467991, at *5.  Whether the employee was suspended and under what circumstances was a question of fact for the arbitrator to decide in the first instance and the District Court erred in wading into that question.  This is especially true given that the arbitrator concluded this case involved the reversal of a disciplinary suspension.  *See* App. 124 (explaining that the situation before the arbitrator fits "exactly" the archetypal "just cause" case in which "*discipline* is reversed or overturned" and proceeding to apply the just cause standard to the facts before him) (emphasis added).  Any evidence to dispute that the employee was disciplined should have been adduced at the arbitration.  As the arbitrator's findings were not clearly erroneous and the arbitrator's interpretation of the CBA was arguably supported, the District Court should have enforced the award.

7

## III

For the foregoing reasons, we will vacate and remand for the District Court to enter an order enforcing the award.